**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

GAVIN/SOLMONESE LLC, the Liquidating Trustee
of the Waste2Energy Liquidating Trust created in
accordance with the confirmed Chapter 11 Plan of
Reorganization for WASTE2ENERGY HOLDINGS, INC.,
WASTE2ENERGY, INC., WASTE2ENERGY GROUP
HOLDINGS PLC, AND WASTE2ENERGY
TECHNOLOGIES INTERNATIONAL LTD.,

                    Plaintiff,

      -against-

CHRISTOPHER D'ARNAUD-TAYLOR, PETER
BOHAN, JOHN JOSEPH MURPHY, CHARLES VISTA,
LLC, GREGG LORENZO, AND FRANCIS LORENZO,

                 Defendants.

13-CV-06400 (HB)

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
900 Third Avenue, 16th Fl.
New York, NY 10022
*Attorneys for Plaintiff,*
*Gavin/Solmonese LLC*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

LEGAL ARGUMENT .......................................................................................................... 3

  I.   DEFENDANTS' MOTIONS TO DISMISS MUST BE DENIED UNDER THE LIBERAL
       PLEADING STANDARD SET FORTH IN RULE 12(B)(6). ........................................... 3

  II.  PLAINTIFF'S SECTION 10(B) AND RULE 10B-5 CLAIMS ARE SUSTAINABLE AS
       A MATTER OF LAW. ........................................................................................... 4

    A.   THE FAC ADEQUATELY PLEADS RELIANCE. ...................................................... 4

    B.   THE FAC SPECIFIES THE FRAUD CLAIMS AGAINST EACH DEFENDANT ... 7

    C.   THE INVESTORS' RELIANCE ON THE POM, THE OFFERING MATERIALS,
         AND THE SUPPLEMENTAL DISCLOSURES WAS JUSTIFIED AND NOT
         RECKLESS ...................................................................................................... 10

    D.   THE PURPORTED DISCLAIMERS IN THE SUBSCRIPTION AGREEMENT DO
         NOT BAR PLAINTIFF'S MERITORIOUS CLAIMS ............................................ 14

    E.   PLAINTIFF ADEQUATELY PLEADS SCIENTER ............................................... 15

    F.   PLAINTIFF ADEQUATELY PLEADS LOSS CAUSATION ................................. 18

    G.   PLAINTIFF'S SECTION 10(B) AND RULE 10(B)-5 CLAIMS ARE NOT TIME-
         BARRED ........................................................................................................ 19

    H.   THE FAC ADEQUATELY PLEADS A CONTROL PERSON CLAIM ................. 21

  III. PLAINTIFF'S COMMON-LAW CLAIMS SHOULD BE SUSTAINED. ........................ 23

    A.   PLAINTIFF HAS PROPERLY ALLEGED A CLAIM FOR NEGLIGENT
         MISREPRESENTATION .................................................................................. 23

    B.   PLAINTIFF ADEQUATELY PLEADS A BREACH OF FIDUCIARY DUTY OR
         CONVERSION ................................................................................................ 25

    C.   PLANTIFF STATED A COGNIZABLE CLAIM FOR NEGLIGENT HIRING,
         RETENTION, AND/OR SUPERVISION .............................................................. 27

    D.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS SUSTAINABLE ................... 28

  IV. PLAINTIFF NEED NOT PURSUE ITS CLAIMS IN ARBITRATION ........................... 29

CONCLUSION .................................................................................................................. 30

49676/0002-10516471v1

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AFA Protective Systems, Inc. v. American Telephone and Telegraph Company, Inc.*, 57 N.Y.2d 912 (1982) ..................................................................................................25, 26

*Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972) .....................................................4, 7

*In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp.2d 424 (S.D.N.Y. 2000) .......................................................................................................................................7

*Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y. 2010) ....................................4

*Arisa Multi-Strategy Offshore Fraud, Ltd. v. Devaney*, 907 N.Y.S.2d 98 (N.Y. Cty. 2009) ........12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .......................................22

*In re Beacon Associates Litigation*, 745 F.Supp.2d 386 (S.D.N.Y. 2010) ..............................6, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................3

*Brooke v. Schlesinger*, 898 F.Supp. 1076 (S.D.N.Y 1995)...........................................................8

*Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020 ...................................................................6, 11

*Caiola v. Citibank, N.A.*, 295 F.3d 312 (2d Cir. 2002)...........................................................3, 15

*In re Citigroup, Inc.*, No. 09 Md 2043, 2011 WL 744745  (S.D.N.Y. Mar. 1, 2011), aff'd 471 Fed.Appx. 30 (2d Cir. 2012).............................................................................................3

*City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) ....................................................................................................................20, 21

*Colodney v. Continuum Health Partners, Inc.*, No. 03 CV 7276, 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004)........................................................................................................29

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ..............................................................................5

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).........................................................................................................17

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179 (2011).............................................4

*Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511 (2012) ...................................................29

*Gumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729 (2d Cir. 1984)...........................15

i

*Hammerstone NV, Inc. v. Hoffman*, No. 09 CV 2685, 2010 WL 882887 (S.D.N.Y. Mar. 10, 2010) ....................................................................................................................22

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) .....................................................................15

*Helfant v. Louisiana & Southern Life Ins. Co.*, 82 F.R.D. 53 (E.D.N.Y. 1979) ...........................8

*Holley v. Crank*, 400 F.3d 667 (9th Cir. 2005) ...........................................................................27

*International Prods Co. v. Erie R.R. Co.*, 244 N.Y. 331 (1927) ..................................................25

*J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144 (2007) .......................................................24

*Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996) ..........................................................................24, 25

*King Cty., Wash. v. IKB Deutsche Industriebank AG*, 708 F.Supp.2d 334 (S.D.N.Y. 2010) .......19

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ..................................................4, 19

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ..........................................................................7, 9

*Mandarin Trading Ltd. v. Guy Wildenstein*, 16 N.Y.3d 173 (2011) ...........................................24

*McGowan v. Ferro*, 859 A.2d 1012 (Del. Ch. 2004) ...................................................................27

*Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010) ..................................................................20

*Meyer v. Holley*, 123 S. Ct. 824 (2003) ......................................................................................27

*Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F.Supp. 332 (S.D.N.Y. 1982) ...................9

*Ohman v. Kahn,* 685 F.Supp. 1302 (S.D.N.Y. 1988) .....................................................................8

*In re Oxford Health Plans, Inc.*, 187 F.R.D. 133 (S.D.N.Y. 1999) ...............................................9

*Pellman v. Cinerama, Inc.*, 503 F.Supp. 107 (S.D.N.Y. 1980) .....................................................8

*Philips Intern. Investments, LLC v. Pektor*, 982 N.Y.S.2d 98 (1st Dep't 2014) ...........................29

*Polar Int'l Brokerage Corp. v. Reeve*, 108 F.Supp.2d 225 (S.D.N.Y. 2000) ................................7

*Prime Mover Capital Partners, L.P. v. Elixer Gaming Technologies, Inc.*, 793 F.Supp.2d 651 (S.D.N.Y. 2011) ..............................................................................................................25

*Riviello v. Waldron*, 47 N.Y.2d 297 (1979) .................................................................................29

*Royal American Managers, Inc. v. IRC Holdings Corp.*, 885 F.3d 1011 (2d Cir. 1989) ..............11

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996), cert. den. 522 U.S. 812 (1997) ..............................................................................................................................22, 23

ii

*Sperber Adams Assocs. v. JEM Management Assocs. Corp.*, No. 90 CIV 7405, 1992 WL 138344 (S.D.N.Y. June 4, 1992) ........................................................................................9

*Stevens v. Equidyne Extractive Indus. 1980*, 694 F.Supp. 1057 (S.D.N.Y. 1988) ........................8

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) .................7

*Stuart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992)....................................................................25

*Suez Equity Investors, LP v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ..............22, 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................................16, 17

*Trade Fin. Corp. v. Deutsche Bank AG*, No. 05 CIV 0902, 2008 WL 2428225 (S.D.N.Y. June 13, 2008)......................................................................................................................12

*U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 554 F.Supp.2d 523 (S.D.N.Y. 2008) ....................................................................................................................3

*Velez v. Vassallo*, 203 F.Supp.2d 312 (S.D.N.Y. 2002) ................................................................23

*Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*, 2014 WL 897223 (Del. Ch. Mar. 5, 2014).........................................................................................................................27

## STATUTES

15 U.S.C. § 78 u-4(b)(1) ....................................................................................................................5

28 U.S.C. § 1658(b) .........................................................................................................................20

17 C.F.R. 240.10(b)-5 ...........................................................................................................1, 4, 9, 20

## RULES

Federal Rule of Civil Procedure 9(b)..................................................................................4, 5, 8, 9

Federal Rule of Civil Procedure 8 .....................................................................................................8

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1, 3, 17, 21, 27

iii

## PRELIMINARY STATEMENT

Plaintiff, Gavin/Solmonese, LLC ("Plaintiff"), respectfully submits this memorandum of law in opposition to three separate motions to dismiss Plaintiff's First Amended Complaint ("FAC") filed by (i) defendants Christopher D'Arnaud-Taylor ("Taylor"), Peter Bohan ("Bohan"), John Joseph Murphy ("Murphy") (collectively, the "D&O Defendants"); (ii) defendants Charles Vista, LLC ("Vista") and Gregg Lorenzo ("G. Lorenzo") (together, the "Vista Defendants"); and (iii) defendant Francis Lorenzo ("F. Lorenzo" and with the D&O and Vista Defendants, the "Defendants").[1]   The motions to dismiss, which all contend that the Plaintiff failed to state claims for which relief can be granted, should be denied in their entirety.

Plaintiff, in its capacity as the liquidating trustee of the Waste2Energy Liquidating Trust created under the confirmed Chapter 11 Plan of Reorganization for Waste2Energy Holdings, Inc. ("Holdings") and its direct or indirectly wholly owned subsidiaries, Waste2Energy, Inc., Waste2Energy Group Holdings, PLC, and Waste2Energy Technologies International, Ltd. (the "Subsidiaries"), seeks damages caused by the fraud and negligent misrepresentations of the Defendants.  These claims arise under Sections 10(b) and 20(d) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), 78(t) (the "1934 Act"), Rule 10(b)-5 promulgated thereunder and applicable common law.  Plaintiff also asserts claims for unjust enrichment against the Vista Defendants, breaches of fiduciary duty by the D&O Defendants, conversion/misappropriation against Murphy, and negligent hiring/supervision/retention against Taylor and Bohan.

The claims for relief for fraud and negligent misrepresentation relate to and arise out of a solicitation that began in 2009, and extended through September, 2010, pursuant to which Defendants induced Plaintiff's assignors (the "Investors") to purchase 12% "Senior Convertible

---

[1] In his moving brief, F. Lorenzo merely attacks the factual allegations contained in the FAC.  However, under the Rule 12(b)(6) standard, the Court must accept all of Plaintiff's allegations as true and construe all reasonable inferences in Plaintiff's favor.  Thus, F. Lorenzo's motion to dismiss must be denied as a matter of law.

Debentures" (the "Debentures").   The solicitation was made primarily, but not exclusively, through a "Confidential Private Offering Memorandum" as amended from time to time (although never in any material way) (the "POM").   $10 million of worthless Debentures were sold in this solicitation, based on recklessly false and misleading statements and material omissions concerning the business prospects, key assets, and capabilities of Holdings and the Subsidiaries.

The D&O Defendants argue that Plaintiff failed to adequately plead reliance and scienter to support its securities fraud claims; they also argue that these claims are time-barred and that the FAC failed to state a control person claim and claims for negligent misrepresentation, breach of fiduciary duty, conversion and negligent hiring/retention/supervision.   Each of these arguments is without merit.   The FAC includes specific allegations from which a trier of fact could (and will) conclude that the Investors' reliance on the Defendants' misrepresentations was justified, and in no way reckless, and that the Defendants acted with the requisite scienter.

The Vista Defendants similarly argue that Plaintiff failed to adequately plead reliance, scienter and loss causation.   They assert that the securities claims are time-barred, and that Plaintiff failed to adequately plead common-law causes of action for negligent misrepresentation and unjust enrichment, adding that the "group pleading" doctrine is not applicable to them. Lastly, the Vista Defendants contend that the Plaintiff must arbitrate its claims against them, yet they did not cross-move to compel arbitration.   As explained herein, the Vista Defendants' arguments fail because they attempt to argue the facts, which is inappropriate on a motion to dismiss, misconstrue the law, and fail to direct the Court to an applicable arbitration agreement.

As a result, the Court must deny Defendants' motions to dismiss the FAC as it has set forth sufficient allegations to sustain Plaintiff's claims.

# LEGAL ARGUMENT[2]

## I.    DEFENDANTS' MOTIONS TO DISMISS MUST BE DENIED UNDER THE LIBERAL PLEADING STANDARD SET FORTH IN RULE 12(B)(6).

Defendants' motions to dismiss must be denied because Plaintiff has pled facts sufficient to allow the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged in the FAC.  Dismissal for failure to state a claim is not warranted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Caiola v. Citibank, N.A.*, 295 F.3d 312, 321 (2d Cir. 2002).  Pursuant to Rule 12(b)(6), a complaint must only "provide the grounds upon which [its] claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Id.*  In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.[3] *U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 554 F.Supp.2d 523, 532 (S.D.N.Y. 2008).

As set forth in detail below, each of Plaintiff's claims far exceeds the "facial plausibility" test of *Twomby*.  A claim has facial plausibility when the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] A detailed recitation of the facts is set forth in the FAC.  For the sake of economy, those facts will not be repeated at length herein.  That recitation mandates that Defendants' respective motions to dismiss should be denied because they can be held liable for the claims asserted based on Plaintiff's well-pleaded allegations.

[3] The Court may consider the Offering Materials (as hereafter defined).  Although courts considering a motion to dismiss are typically restricted to the allegations in the complaint, "in certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." *In re Citigroup, Inc.*, No. 09 Md 2043 (LTS), 2011 WL 744745, *5 (S.D.N.Y. Mar. 1, 2011), aff'd 471 Fed.Appx. 30 (2d Cir. 2012) (internal citations omitted).  For example, "Courts may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing suit." *Id.*

## II.     PLAINTIFF'S SECTION 10(B) AND RULE 10B-5 CLAIMS ARE SUSTAINABLE AS A MATTER OF LAW.

### A.     The FAC Adequately Pleads Reliance.

Defendants argue that the FAC must be dismissed because Plaintiff fails to adequately plead that the Investors justifiably relied on the POM, the Offering Materials and the Supplemental Disclosures in deciding to acquire the Debentures.  According to Defendants, the applicable rules of procedure and statutes, as construed by case law, require a plaintiff to specify each misrepresentation or false or misleading statement and when exactly it was made.  (*See*, *e.g.*, D&O Defendants Memorandum at p. 7.)  Defendants misstate the law.  Neither Rule 9(b) of the *Fed.R.Civ.P.* nor §78u-4(b) of the Private Securities Litigation Reform Act ("PSLRA") requires that the reliance element of a securities or common-law fraud claim be pled in such a fashion.  But even if the standard suggested by Defendants were the law, the FAC meets and exceeds the test.

Proving reliance requires a plaintiff to show he was aware "of a company's statement and engaged in a relevant transaction…based on that specific misrepresentation."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2185 (2011).  Pleading reliance cannot be more onerous than proving reliance.  To plead reliance, a plaintiff need only allege that "but for the claimed representations or omissions, the plaintiff would not have entered into the detrimental securities transaction."  *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 411 (S.D.N.Y. 2010) (*quoting Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005)).[4]

---

[4] The D&O Defendants argue that because this is not a "fraud on the market" case, the presumption of reliance does not apply.  *See Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153-54 (1972).  While Plaintiff agrees that this case does not involve a "fraud on the market," nevertheless, the presumption of reliance applies because there were material omissions that did not exacerbate statements made by the Defendants, but flat out contradicted them.  *See infra.* p. 8.

4

The PSLRA does not specify how reliance must be pled for claims brought under Section 10(b) or 20(a) of the Securities Exchange Act.  It states more generally that a complaint "must specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78 u-4(b)(1).  The FAC does just that.  It specifically identifies numerous statements found in the POM or made as part of the Supplemental Disclosures that are false or misleading and provides a more than adequate explanation as to why the statements are untrue or misleading.  (*See*, *e.g.*, FAC ¶¶ 3-5, 9, 49-53, 55-62, 64, 66-70.)

What must be pled to meet the requirements of Rule 9(b) appears to have been first set forth in *Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989).  In that case, the Second Circuit concluded that to "satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  *Id.* at 11.  The FAC includes allegations sufficient to meet these elements.  (*See* FAC ¶¶ 3-5, 9, 49-51, 53, 55-62, 64 and 66-70.)  These paragraphs as well as other parts of the FAC, identify, for example, the false and misleading statements in the POM and in the Supplemental Disclosures whereby all of the Defendants misrepresented the nature of W2E's proprietary technology, know-how, its human and intellectual capital, its ability to design and construct these facilities and the value of its intangible property rights.  The FAC takes great pains to explain why these statements are actionable.  It is self-evident where the statements were made and, under the group pleading doctrine, *see infra* Section II(B), all of the Defendants are responsible.

What is unsaid, but implied in Defendants' reliance argument, is that unless Plaintiff can state in the FAC that each Investor read the POM and expressly relied on it in making the

5

investment decision, the FAC is deficient.   This argument, however, ignores that the Subscription Agreement each Investor signed, and which the D&O Defendants submitted to the Court (*see* Exhibit 13 of the Declaration of William M. Regan, dated March 6, 2014), *prima facie*, shows actual reliance.   While Defendants point to the Subscription Agreement arguing it precludes an Investor from reasonably relying on statements not contained in the Offering Materials and of which the POM was a part, they neglect to point out that it also contains a representation by each Investor that it has read and is actually relying on the accuracy of the Offering Materials in purchasing Debentures.

Section 1.5 of the Subscription Agreement includes a representation that the Investor has "received, carefully reviewed and understands [the Subscription Agreement], the Memorandum [*i.e.* the POM] including all exhibits thereto and any documents which may have been made available on request" (the "Offering Materials").   In Section 1.6(a), each subscribing Investor represents to Holdings and the Subsidiaries that it is relying on the information provided by the "Company in the Offering Materials."[5]

Lastly, actual reliance need not even be pled, but may be presumed.   When, as here, a complaint alleges omissions "that a reasonable investor might have considered important in the making of [the] decision" to acquire securities, reliance is presumed.   *Affiliated Ute Citizens v. U.S.*, *supra*, at 153-54.   Some thirty-five years after *Affiliated Ute*, the Supreme Court affirmed

---

[5] "Offering Materials" were defined as all materials provided to a subscriber by the Company and its representatives as part of the solicitation process.  In other words, by its very terms, the Subscription Agreement permitted Investors to consider information outside of the POM and to the extent the Defendants supplied the Investors with additional information, they had a duty to ensure that the information was accurate.  *See, e.g.*, *In re Beacon Associates Litigation*, 745 F.Supp.2d 386, 410 (S.D.N.Y. 2010).  Once they made Supplemental Disclosures, the Defendants cannot disclaim responsibility for their false or misleading nature by pointing to purported limitations in the Subscription Agreement.  "[I]nformation or representations outside of [the offering document] may be material and justify reliance.  As stated by the Tenth Circuit in *Zobrist*, 'we do not imply that the defendants can disclaim responsibility for their misrepresentations simply by disclosing the risks in the memorandum and therein warning investors not to rely on representations not contained within the memorandum.'" *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, fn 4 (2d Cir. 1993) (internal citation omitted).

49676/0002-10516471v1

its vitality in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).   In *Stoneridge*, the Supreme Court identified the two circumstances where it is appropriate to presume reliance.   One is when there is a "fraud-on-the-market;"   the other is when there "is an omission of a material fact by one with a duty to disclose."   In those instances "the investor to whom the duty was owed need not provide specific proof of reliance."   *Id.*

## B.       The FAC Specifies The Fraud Claims Against Each Defendant.

Defendants argue that the FAC must be dismissed because Plaintiff fails to specify which Defendants made fraudulent misstatements and omissions and improperly relies on the group pleading doctrine.   Defendants misconstrue the FAC, which does in fact specify the Defendants who made material misstatements and omissions, and misstate the law on group pleading.

It is well settled that group pleading is appropriate where, as here, Defendants are insiders and were intimately involved with the solicitation.[6]   *See In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp.2d 424, 442 (S.D.N.Y. 2000) ("grouping defendants together in the complaint does not in itself make the allegations defective.   It is well settled that plaintiffs may engage in so-called group-pleading under 10(b) and Rule 10b-5; nothing in the PSLRA has altered that doctrine" *citing In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999)); *see also Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (no specific connection between fraudulent representations and particular defendants was necessary where defendants were insiders or affiliates participating in the offer of the securities in question); *see also Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y. 1980) ("The

---

[6] "The group pleading doctrine is an exception to the requirement that the fraudulent act of each defendant be identified separately in the complaint.   Group pleading allows plaintiffs to 'rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company.'"   *Polar Int'l Brokerage Corp. v. Reeve*, 108 F.Supp.2d 225, 237 (S.D.N.Y. 2000) (internal citation omitted).

7

complaint here…does not simply assert fraudulent or deceptive conduct, but instead reasonably details the bases for those allegations…Rule 9(b) cannot be viewed in vacuo. The requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives…of Rule 8 that the pleadings contain a short and plain statement of the claim or defense and (that) each averment should be simple, concise and direct. Rule 9(b) does not require nor make legitimate the pleadings of detailed evidentiary matter") (internal citation omitted).

In *Pellman*, the defendants complained the fraud was not pled with particularity as to the individual defendants. 503 F.Supp. 107, 110-11. The court found that "[t]he defendants here are all insiders, however, and numerous courts have held that the conduct of such individuals need not be specified if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer." *Id.* at 111 (*citing Helfant v. Louisiana & Southern Life Ins. Co.*, 82 F.R.D. 53, 57 (E.D.N.Y. 1979)).

Here, the FAC adequately pleads that the D&O Defendants were insiders and involved in the preparation and approval of the POM.[7] (*See* FAC ¶34 "[n]umerous emails discussing drafts of the POM, demonstrate that it was prepared and approved with input from Taylor, Bohan, Murphy, G. Lorenzo and F. Lorenzo, all of whom had knowledge of and involvement in the W2E's everyday business"; *see also* FAC ¶¶ 25-29.) Thus, the group pleading doctrine applies and the FAC adequately pleads fraud claims against corporate insiders, the D&O Defendants.[8]

---

[7] *See Brooke v. Schlesinger*, 898 F.Supp. 1076, 1088 (S.D.N.Y 1995) ("it has been held in the securities fraud context that where the defendants are insiders…it is not necessary to specify the conduct of each defendant"); s*ee Ohman v. Kahn*, 685 F.Supp. 1302 (S.D.N.Y. 1988) (principals of corporation offering shares are considered insiders); *Stevens v. Equidyne Extractive Indus. 1980*, 694 F.Supp. 1057, 1061 (S.D.N.Y. 1988) (acknowledging that "corporate officials making stock offerings or general partners offering limited partnerships may be considered insiders for the purposes of Rule 9(b)).

[8] At a minimum, should the Court find that Plaintiff failed to comply with Rule 9(b)'s requirement for particularity in pleading fraud claims, Plaintiff should be afforded the opportunity to amend the Complaint so it may

8

Likewise, the group pleading doctrine has been adequately pled, and the FAC properly sets forth fraud claims, against the Vista Defendants and F. Lorenzo, who acted as W2E's placement agent for the sale or "placement" of the Debentures.  (FAC ¶ 33.)  The FAC alleges that G. Lorenzo and F. Lorenzo were intimately involved in the preparation and approval of the POM and that they had knowledge of and involvement in W2E's everyday business.  (FAC ¶ 34.)  "[P]rimary liability under Rule 10b-5 may be imposed not only on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration."  *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999) (internal citation omitted) (defendants who did not directly make fraudulent statements were subject to group pleading presumption where they had knowledge of the fraud and assisted in its perpetration by, *inter alia*, "drafting, reviewing and/or disseminating the statements, and keeping silent about the truth while trading on the negative inside information"); *Sperber Adams Assocs. v. JEM Management Assocs. Corp.*, No. 90 CIV 7405, 1992 WL 138344, *5 (S.D.N.Y. June 4, 1992) (outside director who prepared and distributed offering materials is considered an 'insider' for purposes of Rule 9(b) particularity inquiry).   Indeed, the FAC alleges that the Vista Defendants and F. Lorenzo not only were intimately involved in the preparation and dissemination of the fraudulent POM, but that they made specific material misrepresentations and omissions, including at investor meetings held at Vista's office, to induce Investors to purchase the Debentures.  (*See*, *e.g.*, FAC ¶¶ 54-57, 79-108.)

---

appropriately do so.  *See Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F.Supp. 332 (S.D.N.Y. 1982) (denying motion to dismiss fraud claim on condition that plaintiff amend complaint to meet requirements of Rule 9(b)); *Luce*, *supra*, 802 F.2d at 56-57 (where plaintiffs specifically requested leave to amend should dismissal be granted, dismissal of complaint for failure to plead fraud with sufficient particularity without leave to amend was an abuse of discretion.)

49676/0002-10516471v1

Moreover, the FAC alleges that the Vista Defendants and F. Lorenzo were intimately involved in W2E's business.  For example, Vista stood to receive many millions of dollars from the placement of Debentures, including a significant number of warrants to purchase up to 4.5 percent of Holding's stock.  The Vista Defendants and F. Lorenzo were thus highly motivated to sell the Debentures by any means necessary.  (FAC ¶¶ 36-37.)  In addition, Vista held the right to select two directors of its choice out a board of five directors (*i.e.* 40% of Holding's board).  Thus, the group pleading doctrine applies to the Vista Defendants and F. Lorenzo.

### C.     The Investors' Reliance on the POM, the Offering Materials, and the Supplemental Disclosures  Was Justified and  Not Reckless.

In Point I.A. (ii) of their brief, the D&O Defendants contend that as a "matter of law," the Investors could not have reasonably relied on the POM, the Offering Materials or the Supplemental Disclosures in purchasing the Debentures.  According to the D&O Defendants, because the Investors could have discovered through "minimal due diligence" that the statements and representations in the POM, the Offering Materials and the Supplemental Disclosures were false or misleading, they could not justifiably rely on what was represented therein.

This is quite an extraordinary position and not surprisingly one that finds no support in case law.  If this were the law it would follow that:  (i) there would be no liability for false and misleading statements in solicitation materials. no matter how egregious or reckless, if a defendant could: (a) simply point to something not included in the solicitation materials that casts doubt on the statements contained therein; and (b) claim that an investor should have independently discovered that the materials were false and misleading; (ii)  buyers of securities have a duty to not only read the solicitation materials, but to scour an issuer's public filings (and perhaps other information available from public sources of varying reliability such as what might be found in an internet search) to verify the accuracy of the solicitation materials; (iii) under such

10

circumstances parties responsible for the misstatements would be immune from liability; and (iv) issuers could safely misrepresent facts by claiming that investors had the means and opportunity to learn that what was represented to them in the solicitation materials was false or misleading. This argument of course contradicts Defendants' other claim, that had the Investors engaged in such due diligence, they could not in any event rely on what they learned because of the disclaimers in the Subscription Agreement.

Respectfully, the Court should give this inherently-flawed argument little consideration. It misstates applicable law and deliberately misconstrues what was alleged in the FAC. Prospective investors may not rely on statements contained in solicitation materials only if it would be reckless to do so. *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993). There is no bright line as to what constitutes recklessness and it is absolutely not "well settled that as a matter of law" failure to read all of an issuer's public filings is *per se* reckless. (*See* D&O Defendants Memorandum at p. 7.) As the Second Circuit held in *Brown v. E.F. Hutton*, *supra*, "[t]o determine whether an investor acted recklessly, and therefore without justifiable reliance, no single factor is dispositive, and all relevant factors must be considered and balanced," *citing Royal American Managers, Inc. v. IRC Holdings Corp.*, 885 F.3d 1011 (2d Cir. 1989). In deciding whether a purchaser's reliance was justified, the *Brown* court identified a non-exclusive list of factors to be considered. They include the sophistication and financial expertise of the plaintiffs, the existence of longstanding business or personal relationships, access to relevant information, concealment of the fraud, the opportunity to uncover the fraud and the generality or specificity of the misrepresentations. *Id.* at 1032.

Because there is no *per se* rule applicable to when an investor's reliance is justified or when he has acted recklessly, the issue cannot be resolved on a motion to dismiss. *See, e.g, E* *

*Trade Fin. Corp. v. Deutsche Bank AG*, No. 05 CIV 0902, 2008 WL 2428225, *21-23 (S.D.N.Y. June 13, 2008) (whether reliance was reckless is a fact-specific inquiry not suitable to resolution on a motion to dismiss).  New York State courts take the same approach when deciding whether common-law fraud claims should be dismissed in the face of an argument that a plaintiff's reliance was not justified.  *See*, *e.g.*, *Arisa Multi-Strategy Offshore Fraud, Ltd. v. Devaney*, 907 N.Y.S.2d 98, *8 (N.Y. Cty. 2009) (reasonable reliance not susceptible to summary disposition).

There is no fair reading of the FAC that establishes as a matter of law that the Investors acted recklessly.  They lacked, for example, access to the information, first disclosed by Murphy and Taylor in their depositions, that W2E did not own the intellectual property it claimed to have or that contrary to what was stated in the POM, W2E "was not very good at making it [the intellectual property and the Dargavel Facility] work."  (FAC ¶ 62.)  No amount of due diligence, let alone a minimum amount, would have uncovered that W2E's officers and directors believed that the "proprietary know how" and intellectual property touted as being of such value was not even owned by W2E.  No amount of reasonable, let alone minimal, due diligence would have uncovered the incessant infighting among senior management and the assessment that W2E's chief technology officer and chief engineer was incompetent.

Finally, the D&O Defendants maintain that because filings with the Securities and Exchange Commission ("SEC") contemporaneous to the initial POM disclosed that W2E considered certain "project plans, technology and control" as suddenly having no value, the Investors could not have justifiably relied on any statement in the POM, the Offering Materials or the Supplemental Disclosures which represented that W2E owned valuable intellectual property, know-how or technology.  As the D&O Defendants would have it, any Investor who believed what he was told in the POM, the Offering Materials or by way of the Supplemental

Disclosures would have been acting recklessly.  For example, no Investor could justifiably rely on the representation in the POM that W2E had a "significant IP portfolio in the form of trade secrets and know-how for the operations, management and control of gasification processes …" "enhanced by the technical documentation and support necessary" to operationalize the facilities and obtain regulatory approvals.  (FAC ¶ 51.)  The consequence of this argument is that the entire solicitation was implemented through a sham document.

Putting aside that whether the Investors justifiably relied on the information and documents expressly dedicated to inducing them to acquire Debentures is an issue of fact, the disclosure that W2E had written off the cost it had booked to certain "technology and project plans" that it had acquired is irrelevant.  W2E's pitch to the Investors was that it had developed its own intellectual property, know-how, trade secrets and proprietary technology, wholly apart from the technology it had purchased.   The disclosure in the 8-K/A cited by the D&O Defendants served to reinforce, not contradict, this point:  "[Henceforth] the Company's IP platform would be built on a new set of plans, design specifications and technology that was developed starting in January 2009 through the expected completion of the project in late 2009." (D&O Defendants Memorandum at p.8.)   This statement plainly distinguishes between "acquired" intellectual property (worthless) and "developed" intellectual property (very valuable).  Indeed, if an Investor was supposed to infer from the public filing that all of W2E's intellectual property was worthless, what purpose would there be to the Debenture offering? Were Investors to conclude the offering was to raise money to support worthless technology?[9]

---

[9] Indeed, if in October, 2009, Defendants were of the view that all of the intellectual property of W2E was without value, they had a duty to disclose this in the subsequently amended and restated POMs, which were distributed to Investors as part of the solicitation.  However, in February, 2010, Defendants distributed an amended and restated POM, which contained the same statements and representations concerning the value of W2E's intellectual property, know-how and proprietary technology.  (FAC ¶ 69; Regan Decl., Exhibit C, POM dated February, 2010 at p. 32.)

13

**D.     The Purported Disclaimers in the Subscription Agreement Do Not
        Bar Plaintiff's Meritorious Claims**

The D&O Defendants argue that the Investors prospectively disclaimed reliance on oral representations when they signed the Subscription Agreement citing language in the Subscription Agreement that in making the decision to invest, an Investor "relied solely upon the information provided by the Company in the Offering Materials… disclaim[ed] reliance on any statements made".  (Regan Decl., Exh. 13, Subscription Agreement, ¶1.6(a).).  Again, the D&O Defendants' argument is disingenuous at best, as it fails to take into account contradictory operative language contained in the Subscription Agreement.

The Subscription Agreement specifically provides as follows:

> The Subscriber…hereby represents that the Subscriber has been furnished by the Company during the course of the Offering with all information regarding the Company, the terms and conditions of the Offering, <u>and any additional information that the Subscriber has requested or desired to know, and has been afforded the opportunity to ask questions of and receive answers from duly authorized officers or other representatives of the Company concerning the Company and the terms and conditions of the Offering</u>…(emphasis supplied).

(Regan Decl., Exh. 13, Subscription Agreement, ¶1.5.)

The Subscription Agreement thus directly contradicts itself by encouraging the Investors to ask questions of "authorized officers" and "representatives" during the course of the offering, while at the same time effectively (and illegally, *see supra,*) and prospectively disclaiming responsibility for any misrepresentations or fraudulent statements these "authorized officers" and "representatives" may make.[10]

---

[10]  The POM similarly states that "[e]ach prospective investor and his advisor are invited and encouraged to ask questions of the Company with respect to the terms and conditions of the offering and the business of the Company and request additional information necessary to verify information in this Memorandum."  (FAC, Exhibit B, POM at 43.)

14

In support of its fatally flawed argument, the D&O Defendants unpersuasively rely upon *Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996). In *Harsco*, the buyer of a company sued various former officers and owners of the purchased company alleging securities fraud and related common law claims. 91 F.3d 337, 345. The Second Circuit held that the disclaimer in the purchase agreement precluded the plaintiff's federal securities claims and related common law claims because it was extremely detailed and directly tracked the representations on which the plaintiff sought to rely. *Id.* at 344.

Here, by contrast, the disclaimer is undisputedly general in nature and hardly tracks the misrepresentations at issue. As a result, this catch-all disclaimer does not preclude Plaintiff's fraud claims. *See Caiola v. Citibank, N.A.*, 295 F.3d 312, 330-31 (2d Cir. 2002) (defendant argued that investor could not have reasonably relied on oral misrepresentations in light of disclaimers providing that investor would not be relying on defendant's advice or recommendations – Court reasoned that "[a] disclaimer is generally enforceable only if it 'tracks the substance of the alleged misrepresentation…' *Gumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984).") In *Caiola*, the disclaimer provisions "f[e]ll well short of tracking the particular misrepresentations alleged by [plaintiff]…[it was] general, not specific, and sa[id] nothing about [defendant's] commitment to delta hedging." *Id.* at 330.

Further, as a matter of law, notwithstanding the disclaimer in the Subscription Agreement, the D&O Defendants had a duty to provide Investors accurate information, and cannot shield themselves from liability for making false statements. *See infra* Section III(A).

## E.    Plaintiff Adequately Pleads Scienter

Defendants contend the FAC fails to adequately plead "facts giving rise to a strong inference of scienter." (*See* D&O Defendants Memorandum at p. 11; Vista Defendants Memorandum at p.8.) They characterize the allegations supporting scienter as largely

"conclusory".  (*See* D&O Defendants Memorandum at p. 11; Vista Defendants Memorandum at p. 9) and purportedly lacking the specificity required by the PSLRA.  They maintain the allegations in the FAC do not give rise to a strong inference that Defendants acted in a "highly unreasonable fashion" with an "extreme departure from standards of ordinary care" or that any of the Defendants had the motive and opportunity to commit fraud.  (*See, e.g.*, Vista Defendants Memorandum at p .8.)  Once again, Defendants have broached an argument that distorts the FAC and ignores the plentiful and specific factual allegations therein, including the sworn testimony of certain of the Defendants, which just about prove, let alone cogently infer, that Defendants acted with the requisite scienter.

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court set out the test for *pleading* scienter under the PSLRA.  "To qualify as 'strong' within the intendment of section 21(D)(b)(2), we hold, an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  551 U.S. 308, 314.  "A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id*. at 324.

The *Tellabs* decision directs lower courts to consider certain "prescriptions" when deciding if scienter has been adequately pled.  First, all factual allegations must be accepted as true on a motion to dismiss.  *Id.* at 322-23.  Second, "courts must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  The inquiry, as several courts of appeals have recognized, is whether *all* of the facts, taken collectively, give rise to a strong inference of

scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* (internal citation omitted). Since scienter can be proven by showing "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness," *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009), a complaint properly pleads a strong inference of scienter when it contains facts from which a reasonable person could find the inference that defendants have acted with the requisite intent is cogent and at least as compelling as any competing inference. The FAC more than satisfies this test. Consider the following:

(1)       the FAC alleges, based upon admissions from the D&O Defendants, that Defendants were aware of material facts that either directly contradicted the POM or made statements therein materially misleading. These facts pertain to, *inter alia*, the ownership of W2E's "IP," its admitted inability to "make things work" and whether it had the "know-how" to operate, manage and construct gasification plants; (FAC ¶¶ 60-67); and

(2)       the FAC alleges that the Defendants were aware that W2E was not a "first to market" company, that it had no ability to provide "customized engineering solutions" that the "Dargavel Plant" was not officially opened, that its chief engineer and chief technology officer, who was described as essential to Holdings, was viewed by senior management as incompetent and lacking the knowledge and skill needed to perform his job. The FAC, in short, more than amply pleads circumstantial evidence of recklessness if not conscious misbehavior. (FAC ¶¶ 50-51.)

The FAC makes an equally cogent case for inferring that the Vista Defendants acted with the requisite scienter. It first sets forth allegations made by the SEC in administrative proceedings brought to sanction these Defendants for the role they played in the Debenture offering, for which they were fined and barred from the securities industry.[11] The FAC also

---

[11] G. Lorenzo was "barred from associating with any FINRA member firm in any capacity…" by the FINRA Hearing Panel on June 18, 2013, effective immediately. G. Lorenzo was also permanently barred by the SEC from associating with any broker, dealer, investment advisor, municipal securities dealer, municipal advisor or transfer agent, and from participating in any offering of a penny stock, and from associating with any nationally recognized statistical rating organization, by SEC Order dated November 20, 2013. F. Lorenzo is similarly "barred from associating with any broker, dealer, investment adviser, municipal securities dealers, municipal advisor, transfer

alleges that these Defendants stood to reap enormous fees from the Debenture offering, disproportionate to the amount of the offering and well in excess of the fees customary paid for this type of service.  In addition to the commissions and expenses, which equaled thirteen percent of the Debenture proceeds, the Vista Defendants were to receive consulting and investment banking fees.  These Defendants stood to collect over $2.8 million.[12]  (FAC ¶ 36.)

Contrary to what Defendants would have the Court believe, the FAC is a prototype for what should be alleged to meet the PSLRA's scienter requirement.  It contains detailed allegations that give rise to far more than a plausible or reasonable inference of scienter.  The inference of scienter here is indeed cogent and compelling.

### F.   Plaintiff Adequately Pleads Loss Causation

Defendants argue that the FAC must be dismissed because Plaintiff fails to allege loss causation.  According to Defendants, because the Debentures were not fully subscribed and Holdings did not complete an additional capital raise, Defendants are somehow immune from liability for their fraud.  That is not the law.

The law does not "impose[ ] on plaintiffs the heavy burden of pleading facts sufficient to *exclude* other non-fraud explanations."  *King Cty., Wash. v. IKB Deutsche Industriebank AG*, 708 F.Supp.2d 334, 342 (S.D.N.Y. 2010).  Rather, a plaintiff must plead that the "risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005), cert. den. 546 U.S. 935 (2005).

---

agent, or nationally recognized statistical rating organization and from participating in an offering of penny stock" by SEC Order dated December 31, 2013.

[12] The FAC also alleges that the Vista Defendants participated in a material way in the drafting of the POM and that Vista had warrants to acquire up to 4.5% of W2E's common stock and the right to appoint two out of W2E's five directors.  (FAC ¶¶ 34, 36 and 38.)

Here, the FAC alleges just that – the risk that caused the loss was within the zone of risk that Defendants concealed by their misrepresentations and material omissions.  For example, the FAC alleges that Defendants specifically represented to Investors, including at investor meetings at Vista's offices and in correspondence, that Holdings "had valuable, proprietary intellectual property conservatively worth in excess of $10 million which could easily be monetized to satisfy the Debentures" and that, "[t]here are 3 layers of protection: (i) The Company has over $10 mm in confirmed assets…."  (FAC ¶¶ 55-57, 95, 106-108.)  The Investors relied on such representations, believing that, even in a worst-case scenario, they could recoup their investment from the valuable intellectual property Defendants told them Holdings owned.  To the Investors, this was one of the "layers of protection" for their investment.  Consequently, the losses suffered by the Investors "were a foreseeable consequence of Defendants' misrepresentations and omissions.  Because, among other things, W2E did not own any of the intellectual property, trade secrets, proprietary technologies or know [how] and lacked the capability, resources, human capital, and expertise claimed, it was foreseeable that the Debenture Holders would suffer the loss of their investment."  (FAC ¶ 72; *see also* FAC, ¶¶ 161, 172.)  *See In re Beacon Assoc. Litig.*, 745 F.Supp.2d 386, 413 (S.D.N.Y. 2010) (a plaintiff can prove loss causation "by showing that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement").  Moreover, the FAC alleges that had the Investors known Defendants' representations were false, they would not have purchased the Debentures.  (*See* FAC ¶¶ 71, 160, 171.)  Defendants' effort to skirt liability by pointing to other risks allegedly disclosed in the POM is no basis for dismissing the FAC.

### G.     Plaintiff's Section 10(b) and Rule 10(b)-5 Claims are Not Time-Barred

Defendants further contend that Plaintiff's 10(b) claims are time-barred because the Investors "knew or should have known of the alleged fraud long before September 11, 2011"

which was more than two years before the case was commenced.   (D&O Defendants Memorandum at p. 12.)   Defendants argue that the Investors were on inquiry notice (*i.e.* they should have known) they had a claim for securities fraud before that date.   For support, Defendants point to the October, 2009 8K/A, which disclosed the write-down of the acquired "IP," W2E's default on repaying the Debentures, and statements made in an affidavit submitted with the motion for the appointment of a trustee in W2E's bankruptcy case.

Here, again, Defendants have raised an argument that simply ignores the applicable law. The Second Circuit has concluded that the Supreme Court's opinion in *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010), means that inquiry notice has no role in determining when the statute of limitations begins to run under 28 U.S.C. § 1658(b), at least as to claims under the PSLRA.   *See City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011).   *Merck* holds that the limitations period begins to run only after "a reasonably diligent plaintiff would have discovered the facts constituting [each of the elements of] the violation, including scienter – irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."  559 U.S. at 653.

In *City of Pontiac*, *supra*, the Second Circuit explained how the principle announced in *Merck* should be applied: "[W]e hold that a fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint.   In other words, the reasonably diligent plaintiff has not 'discovered' one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss."  *Id.* at 175.   Under this standard, since the amount of "particularity and detail a plaintiff must know before having 'discovered' the fact will depend on the nature of the fact," *id.* at 175, it is generally inappropriate to decide when a

plaintiff "discovered" that he was defrauded on a motion to dismiss, particularly when the allegations in the complaint must be accepted as true.

One of the elements of a 10(b) claim is of course scienter, and to plead this element in sufficient detail to overcome a motion to dismiss, a plaintiff must have sufficient available facts to show that a reasonable person would find the inference of wrongdoing cogent and at least as compelling as other inferences.  In fact, in *City of Pontiac*, the Second Circuit noted that the statute of limitations would *not even begin to run* and the plaintiff's cause of action *would not even accrue* until a "reasonably diligent plaintiff would have uncovered enough information about the defendant's intent to satisfy the heightened pleading requirement for fraud" under the PSLRA.  *Id.* at 176.

Many of the facts alleged in the FAC, especially those pertaining to scienter, are more than sufficient and specific to withstand a Rule 12(b)(6) motion, and were only learned as a result of the Chapter 11 Trustee's post-petition investigation.  It was only after the Trustee unearthed the nature and extent of Defendants' knowledge of the facts that a proper complaint could have been drafted.  For that reason, and because other elements of Defendants' fraud only became known though the Chapter 11 Trustee's investigation,  the Defendants are incorrect – the 10(b) claim is not time-barred.

### H.     The FAC Adequately Pleads a Control Person Claim

Defendants argue the FAC must be dismissed because Plaintiff failed to allege a control person claim.  Defendants' argument relies primarily on their contention that the FAC fails to state a primary violation against Holdings or the Vista Defendants.  As demonstrated herein, the FAC states a valid primary fraud claim against Holdings and the Vista Defendants and, consequently, Defendants' primary argument for striking the control person claim fails.  The

D&O Defendants' secondary argument is that they had no power to exert any control over their agents, the Vista Defendants.  Defendants misconstrue the FAC, which alleges such control.

"Controlling-person liability is a form of secondary liability, under which a plaintiff may allege a primary § 10(b) violation by a person controlled by the defendant and culpable participation by the defendant in the perpetration of the fraud."  *Suez Equity Investors, LP v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001); *Hammerstone NV, Inc. v. Hoffman*, No. 09 CV 2685, 2010 WL 882887, at *7 (S.D.N.Y. Mar. 10, 2010) ("To establish a *prima facie* case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.") (*quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).  "Control over a primary violator may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996), cert. den. 522 U.S. 812 (1997) (*quoting* 17 CFR § 240.12b-2)).  Further, the controlling person must have been in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person.  *Id.* at 1472.

Here, the FAC alleges that the Vista Defendants were agents of Holdings.  (*See, e.g,.* FAC ¶ 35 "The POM stated that Vista was acting as Holdings' exclusive agent…"; FAC ¶ 107 "Vista, G. Lorenzo, and F. Lorenzo were acting as Holdings' agent and within the scope of the authority granted to them by Taylor, Bohan and Holdings"; *see also* FAC ¶¶ 33, 54, 79, 179. 181, 187.)  Thus, the D&O Defendants had the "power to direct or cause the direction of the management and policies of" Holdings' agent, Vista.  *Velez v. Vassallo*, 203 F.Supp.2d 312, 322

(S.D.N.Y. 2002) (the principal may be bound by the actions of his/her agent and "[w]here the principal knows of an unauthorized act taken on his behalf and remains silent, he is deemed to have ratified the act.")  Further, Taylor and Bohan were at Investor meetings at Vista's office where misrepresentations were made by the Vista Defendants and F. Lorenzo.  (*See*, *e.g.*, FAC ¶¶ 52, 53.)  Moreover, the extent of control Holdings and the D&O Defendants had over the Vista Defendants is a factual issue that is not appropriately resolved on a motion to dismiss.

Finally, as a throwaway argument, Defendants assert that the FAC does not allege that Bohan or Murphy (who were each the CEO of Holdings at one time) controlled Holdings. Defendants must be hoping the Court takes them at their word, because the FAC is replete with allegations that Bohan and Murphy controlled Holdings (and its Subsidiaries) and were part of Holdings' "control group."  (*See, e.g.,* FAC ¶¶ 27-29, 77, 139-142, 151, 177-179, 183, 217.)  In sum, Defendants' motion to dismiss the FAC's control person claims does not hold water.

## III.   PLAINTIFF'S COMMON-LAW CLAIMS SHOULD BE SUSTAINED.

### A.   <u>Plaintiff Has Properly Alleged a Claim for Negligent Misrepresentation</u>

The Defendants moved to dismiss Plaintiff's claim for negligent misrepresentation on the ground that an essential element of the claim, the existence of a "special relationship" between the Investors and Defendants, has not been properly pled and under the facts in this case, does not exist as a matter of law.  (*See, e.g.,* Vista Defendants Memorandum at p. 11.)  According to Defendants, a "special relationship" is another name for a fiduciary relationship, and the Defendants were not fiduciaries of the Investors.  Defendants misstate the law once again.

To allege a claim for negligent misrepresentation, a plaintiff must plead: (1) the existence of a special relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) that he reasonably relied on the information. *Mandarin Trading Ltd. v. Guy Wildenstein*, 16 N.Y.3d 173, 180 (2011) (*quoting*

*J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144-148 (2007)). Since negligent misrepresentation is based on New York law, decisions from the New York State Court of Appeals are dispositive and federal courts are bound to follow its decisions.

In *Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996), the New York Court of Appeals undertook to define the "special relationships" needed to sustain a cause of action for negligent misrepresentation. *Id.* at 264. In *Kimmel*, the plaintiff's suit was based on alleged misrepresentations made to induce him to invest in a cogeneration plant, a commercial transaction that failed. Notwithstanding the "commercial context" of the claim, the New York Court of Appeals found that a special relationship existed, holding that a "duty to speak with care exists when 'the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information." *Id.* (*citing International Prods Co. v. Erie R.R. Co.*, 244 N.Y. 331, 338 (1927)).

The Court of Appeals expressly declined to limit "special relationships" to those involving fiduciaries. Negligent misrepresentation, it held, may be imposed "on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id*. In *Kimmell*, the Court found the relationship to exist in that case notwithstanding that the plaintiff's claim arose out of an investment recommended to him by the defendant. And, particularly relevant here, the New York Court of Appeals cautioned that the:

> nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact. In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

24

*See AFA Protective Systems, Inc. v. American Telephone and Telegraph Company, Inc.*, 57 N.Y.2d 912 (1982) (special relationship is an issue that should be left to the finder of fact); *see also Suez Equity Investors L.P. v. Toronto – Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (*citing Kimmel*, and noting that pre-*Kimmel* decisions of the Second Circuit with respect to negligent misrepresentations were no longer valid).[13]

The FAC clearly alleges facts from which a trier of fact could conclude that the "nature and caliber" of the relationship between the Investors and Defendants gave rise to a "special relationship." For instance, the FAC contains facts from which a trier of fact could conclude that Defendants possessed a special expertise, that it was reasonable for the Investors to rely on the representations being made and that Defendants were aware that the Investors would be relying on these representations in deciding whether to purchase the Debentures.[14]

### B. Plaintiff Adequately Pleads a Breach of Fiduciary Duty or Conversion

The D&O Defendants argue that the FAC fails to allege that they breached their duty of care, were self-interested, or acted in bad faith. As set forth *supra*, the FAC discusses extensively the failure of the D&O Defendants to fulfill their fiduciary duties to the Investors.

In his Declaration, Jonathan James Wild, an Advocate of the High Court of the Isle of Man, explained that directors and officers owe a duty to exercise good faith business judgment,

---

[13] Defendants rely primarily on a District Court decision, *Prime Mover Capital Partners, L.P. v. Elixer Gaming Technologies, Inc.*, 793 F.Supp.2d 651 (S.D.N.Y. 2011), for the proposition that a special relationship is just another way of saying a fiduciary relationship. (*See* Vista Defendants Memorandum, fn 10: "The special relationship referred to is a fiduciary relationship, which does not exist among parties who have merely a commercial or contractual relationship …"). The Court in *Prime Mover*, however, erroneously cited to pre-*Kimmel* case law. *See* fn 117, wherein the Court relies on the Second Circuit decision, *Stuart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992), which in turn relied on two New York Supreme Court Appellate Division cases decided approximately 20 years before *Kimmel*. In other words, the *Prime Mover* decision is based on old New York law in direct conflict with *Kimmel*. As the Second Circuit noted expressly in *Suez Equity Investors*, federal courts are bound by *Kimmel*.

[14] At a minimum, as noted by the New York Court of Appeals, the determination of whether a relationship is "special" is factual and, as such, is not appropriate on a motion to dismiss. *AFA Protective Systems, Inc.*, *supra*, 57 N.Y.2d at 914.

due care, diligence and skill in the execution of their duties, and a duty of loyalty.  Wild Decl. ¶ 11.  While Wild contends that commercial judgments "made in good faith" are not to be second guessed under the Isle of Man's counterpart to the business judgment rule, he concedes that directors' and officers' bad faith decisions are not entitled to such protections.  *Id.* at ¶ 13.

The FAC sets forth separate counts for breach of fiduciary duty against each of the D&O Defendants.  Against Taylor and Bohan, the FAC similarly states that the hiring and retention of Murphy amounted to incompetence and mismanagement of the W2E entities they were charged to oversee.  (FAC ¶¶ 197-198.)  Taylor and Bohan failed to monitor and supervise W2E's employees and the progress of the Dargaval project, allowing the company to be looted by Murphy as a result of Taylor's longstanding personal relationship with Murphy.  (FAC ¶¶ 199-202, 209-210.)  The FAC specifically alleges that "Taylor's actions and/or inactions were done for his own self interest, intentionally, *in bad faith*, and with no genuine care for Holdings, PLC, Technologies or their creditors."  (FAC ¶ 200) (emphasis supplied).  As to Bohan, the FAC alleges that  "[n]o reasonable business person would have made the decisions made by Bohan. His actions were not done for any rational business purpose."  (FAC ¶ 212.)  Thus, neither Taylor nor Bohan can shield themselves from liability for their bad faith dereliction of duty behind the business judgment rule.

As to Murphy, the FAC contains numerous allegations of his bad faith looting of the company.  Murphy failed to hire competent employees, removed competent employees, looted the W2E entities and also permitted employees to do the same, engaged in self-dealing, and essentially used the W2E entites as his "personal piggy banks".  (FAC ¶ 218.)  In consideration of the extreme mismanagement and misconduct alleged against Murphy in the FAC, it is incredible that the D&O Defendants argue that Murphy's conduct amounted to a protectable

26

exercise of business judgment.  To the contrary, the extreme nature of Murphy's misconduct forms the basis of separate counts against Taylor and Bohan for breach of fiduciary duty and negligent hiring/retention/supervision simply by keeping Murphy on staff.  These allegations sufficiently state a claim for conversion against Murphy as well based on his unauthorized dominion and control over funds and assets of Holdings and the Subsidiaries.  (FAC ¶ 221.)[15]

Further, as a matter of law, the extent of the D&O Defendants' breaches of their fiduciary duties is a factual issue that is inappropriate to resolve on a Rule 12(b)(6) motion to dismiss.

### C.    Plaintiff Stated a Cognizable Claim for Negligent Hiring, Retention, and/or Supervision

The D&O Defendants also argue that Plaintiff's negligent hiring/retention/supervision claim against Taylor and Bohan fails because it can only be asserted against an "employer," and not a director or officer.  The D&O Defendants further argue that the claim cannot be sustained based on conduct of an employee undertaken within the scope of his employment.

Preliminarily, Plaintiff's claim is based on Taylor and Bohan's alleged roles in hiring and supervising Murphy.  While the D&O Defendants direct the Court's attention to *Meyer v. Holley*, 123 S. Ct. 824, 829 (2003), in support of their theory that Plaintiff's claim can only be brought by an employer, they neglect the holding of *Holley v. Crank*, 400 F.3d 667 (9th Cir. 2005), wherein the Ninth Circuit considered the question left open by the Supreme Court – whether an officer could be held vicariously liable for a supervisor's discriminatory conduct under traditional agency principles.  400 F.3d at 673-74.  The Ninth Circuit concluded that he could, finding that although "liability in the typical employment relationship runs between the corporation and the salesperson and between the corporation and the supervisor, but not between

---

[15] Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it."  *Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*, 2014 WL 897223 (Del. Ch. Mar. 5, 2014) (*quoting McGowan v. Ferro*, 859 A.2d 1012, 1040 (Del. Ch. 2004)).

the salesperson and the supervisor…[the employment relationship between the officer and supervisor was] atypical…When [the officer] delegated [the responsibility of supervising the corporation's salespersons] to the supervisor, he created an agency relationship between himself and [the supervisor], which made [the officer] vicariously liable". *Id.* at 671.   Whether an agency relationship was created between Taylor, Bohan and Murphy is a fact question to be explored in discovery.

Moreover, the allegations in the FAC make clear that Murphy's misconduct (*i.e.* squandering company resources for his own personal gain and use) was outside the scope of his employment.   Although "[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment", *Colodney v. Continuum Health Partners, Inc.*, No. 03 CV 7276, 2004 WL 829158, *8 (S.D.N.Y. Apr. 15, 2004), the question of whether a defendant employee was acting within the scope of his or her employment depends heavily on the facts and circumstances of the particular case, and thus appropriate for a jury.   *Riviello v. Waldron*, 47 N.Y.2d 297, 302-03 (1979).   The FAC states a cognizable claim on its face, and the question of whether Murphy was acting within the scope of his employment is an issue of fact that should not be summarily decided on a motion to dismiss.

### D.   Plaintiff's Unjust Enrichment Claim is Sustainable

The Vista Defendants argue that Plaintiff's unjust enrichment claim fails because the FAC does not allege that they received a benefit directly from the Investors.   However, the Vista Defendants acknowledge that the FAC alleges they earned exorbitant fees and other remuneration in connection with the sale of the Debentures.   (FAC ¶ 192.)   The foregoing allegation is sufficient to state a valid claim for unjust enrichment against the Vista Defendants.

To state a claim for unjust enrichment, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to

28

permit the other party to retain what is sought to be recovered.'" *Philips Intern. Investments, LLC v. Pektor*, 982 N.Y.S.2d 98, 102 (1st Dep't 2014) (*quoting Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012)).  A claim for unjust enrichment "is undoubtedly equitable and depends upon *broad* considerations of equity and justice".  *Ibid.*  A plaintiff is not required to allege privity, but only "a connection between the parties that [is] not too attenuated."  *Id.*

Plaintiff adequately pled that the Vista Defendants were enriched by unlawful transactions at the expense of Holding and the Investors.  Plaintiff specifically alleges that it would be "inequitable" for the Vista Defendants and F. Lorenzo to retain the financial benefits they received from the sale of the Debentures, and seek, among other things, "just and equitable" relief.  (FAC ¶ 193.)  As unjust enrichment is an equitable claim, it ought to be litigated to determine what equity and justice requires under the circumstances of this case.  As a result, Plaintiff's unjust enrichment claim is sustainable at this juncture.

## IV.    PLAINTIFF NEED NOT PURSUE ITS CLAIMS IN ARBITRATION

The Vista Defendants argue that Plaintiff must be compelled to arbitrate due to the arbitration provisions contained in customer agreements between 19 of the 22 Investors and Vista.  The Vista Defendants, however, fail to provide the Court with a binding arbitration agreement.  The purported customer agreements do not encompass the instant dispute, which falls outside of the scope of the 19 of 22 Investors' agreements.

Specifically, the customer agreements provide as follows:  "Any controversy or claim arising out of or relating to this agreement shall be settled by FINRA arbitration procedures then in effect."  (Alison B. Cohen Decl., Exhs. B and C, ¶ 28(b).)  But Plaintiff's claims against the Vista Defendants do not arise out of or relate to the customer agreements provided by the Vista Defendants.  The two sample customer agreements provided purportedly grant Vista authority to act as an agent for one or more of the Investors "with respect to the purchase or sale of

29

securities."  *Id.*, Exhs. B and C, ¶ 2.  The claims stated in the FAC, however, arise out of the

Vista Defendants' actions and omissions as the placement agent of the Debentures *for Holdings*.

    As a result, the Vista Defendants fail to state what provision, if any, renders the within

action an arbitral event.  As such, this Court is the appropriate forum for Plaintiff's claims.[16]

**CONCLUSION**

    For the foregoing reasons Plaintiff respectfully requests that the Court deny the motions

to dismiss in their entirety.

DATED:  April 14, 2014

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
*Attorneys for Plaintiff, Gavin/Solmonese,*
*LLC*


By:_____
        Steven L. Klepper, Esq.
        Laurence May, Esq.
        Leslie F. Prentice, Esq.
        900 Third Avenue, 16th Fl.
        New York, NY 10022

---

[16] Moreover, the Vista Defendants failed to cross-move to compel arbitration.

49676/0002-10516471v1