# MANDATE

1:13-cv-06400-LAP

15-160-cv
Gavin/Solmonese LLC v. D'Arnaud-Taylor

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of January, two thousand sixteen.

PRESENT: REENA RAGGI,
RICHARD C. WESLEY,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb. 3, 2016

------------------------------------------------------------------------

GAVIN/SOLMONESE LLC, the Liquidating Trustee of the Waste2Energy Liquidating Trust created in accordance with the confirmed Chapter 11 Plan of Reorganization for Waste2Energy Holdings, Inc.,

*Plaintiff-Appellant*,

WASTE2ENERGY, INC., WASTE2ENERGY GROUP HOLDINGS PLC, WASTE2ENERGY TECHNOLOGIES INTERNATIONAL LTD.,

*Plaintiffs*,

v.                                                        No. 15-160-cv

CHRISTOPHER D'ARNAUD-TAYLOR, PETER BOHAN, JOHN JOSEPH MURPHY, CHARLES VISTA, LLC, GREGG LORENZO, FRANCIS LORENZO,

*Defendants-Appellees*.

1

---------------------------------------------------------------------------
| | |
|---|---|
| APPEARING FOR APPELLANT: | LAURENCE MAY (Steven L. Klepper and Leslie Prentice, *on the brief*), Cole Schotz, P.C., New York, New York. |
| APPEARING FOR APPELLEES: | WILLIAM M. REGAN (Jonathan A. Rotenberg, *on the brief)*, Katten Muchin Rosenman LLP, New York, New York, *for Christopher D'Arnaud-Taylor and John Joseph Murphy*. |
| | IRA G. GREENBERG (Kara M. Cormier, *on the brief*), Locke Lord LLP, New York, New York, *for Peter Bohan*. |
| | RYAN J. WHALEN (Martin Kaplan, *on the brief*), Gusrae Kaplan Nusbaum PLLC, New York, New York, *for Charles Vista, LLC and Gregg Lorenzo*. |
| | ROBERT G. HEIM, Meyers & Heim LLP, New York, New York, *for Francis Lorenzo*. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 23, 2015, is AFFIRMED.

Plaintiff Gavin/Solmonese LLC appeals from a judgment (1) dismissing its claims under §10(b) of the Securities Exchange Act of 1934 (the "Act"), see 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, against defendants Christopher D'Arnaud-Taylor, John Joseph Murphy, and Peter Bohan (collectively, "W2E Defendants") as barred by the statute of

limitations; (2) compelling plaintiff to arbitrate some of its claims against Charles Vista, LLC ("Charles Vista"), Gregg Lorenzo, and Frank Lorenzo (collectively, "Vista Defendants"); (3) dismissing plaintiff's remaining § 10(b) claims against the Vista Defendants for failure to plead reliance with sufficient particularity or, alternatively, for unreasonable reliance; and (4) dismissing plaintiff's § 20(a) claim, see 15 U.S.C. § 78t(a), against the W2E Defendants for failure to state a claim.

We review a judgment of dismissal de novo, "accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor."  Fink v. Time Warner Cable, 714 F.3d 739, 740–41 (2d Cir. 2013).  We also review de novo a district court's decision to compel arbitration.  See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003).  We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.   Appellate Jurisdiction

Defendants D'Arnaud-Taylor and Murphy challenge appellate jurisdiction, arguing that plaintiff filed its notice of appeal on January 20, 2015, in response to the district court's opinion dated December 23, 2014, and before final judgment was entered on January 23, 2015.  The argument is meritless.  "[A] premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice."  Berlin v.

3

Renaissance Rental Partners, LLC, 723 F.3d 119, 128 (2d Cir. 2013) (internal quotation marks omitted), cert. denied, 135 S. Ct. 113 (2014); see also Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."). Because final judgment has now been entered and D'Arnaud-Taylor and Murphy have demonstrated no prejudice from plaintiff's premature notice of appeal, we have appellate jurisdiction.

2. Statute of Limitations and W2E Defendants

Plaintiff's § 10(b) claim alleged that, in a private offering memorandum ("POM") and various oral communications, defendants misrepresented the value of Waste2Energy Holding Inc.'s ("Waste2Energy") intellectual property to solicit investors in Waste2Energy's private placement of senior convertible debentures. Plaintiff now submits that its September 11, 2013 filing against the W2E Defendants was timely because it was not until 2012, when defendants D'Arnaud-Taylor and Murphy were deposed in bankruptcy proceedings, that plaintiff learned that defendants "were aware of the falsity of the representations with respect to W2E's intellectual property," Appellant's Br. 26, thereby providing it with "the missing piece needed to adequately plead scienter," Appellant's Reply Br. 5.

Title 28 U.S.C. § 1658(b) states that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement

4

concerning the securities laws . . . may be brought not later than the earlier of -- (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." In <u>Merck & Co. v. Reynolds</u>, 559 U.S. 633 (2009), the Supreme Court interpreted § 1658(b)(1) to refer "not only to a plaintiff's <u>actual</u> discovery of certain facts," including facts about scienter, "but also to the facts that a reasonably diligent plaintiff would have discovered." <u>Id.</u> at 644 (emphasis in original). Thus, the statute of limitations on a § 10(b) claim cannot commence until, with reasonable diligence, a plaintiff could have discovered facts indicating that "a defendant made a material misstatement <u>with the intent to deceive</u>—not merely innocently or negligently." <u>Id.</u> at 648−49 (emphasis in original).

Following <u>Merck</u>, this court has held that "a fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." <u>City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.</u>, 637 F.3d 169, 175 (2d Cir. 2011). Because a plausible allegation of scienter requires facts "giving rise to a strong inference that . . . it is at least as likely as not that the defendant acted with the relevant knowledge or intent," the statute of limitations does not commence until "the plaintiff has uncovered—or a reasonably diligent plaintiff would have uncovered—enough information about the defendant's knowledge or intent to satisfy this pleading standard." <u>Id.</u> (internal quotation marks omitted).

In dismissing plaintiff's § 10(b) claim as time barred, the district court concluded that "a substantial portion" of the information alleged in the complaint and integral documents was either known or freely available to investors before September 11, 2011. Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d 530, 536 (S.D.N.Y. 2014). We agree. Even if before D'Arnaud-Taylor's and Murphy's 2012 depositions the W2E Defendants continually maintained that W2E had valuable and propriety intellectual property, the scienter pleading standard does not demand a proverbial "smoking gun" refuting a defendant's statements. Rather, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff must plead only enough facts to give "rise to a strong inference that the defendant acted with the required state of mind such that it is at least as likely as not that the defendant acted with the relevant knowledge or intent." City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc., 637 F.3d at 174–75 (emphasis added) (internal quotation marks omitted); see 15 U.S.C. § 78u-4(b)(2); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007).[1]

Here, the district court explained that there were significant "storm warnings" as early as October 1, 2009, that should have prompted investigation by the investors who

---

[1] D'Arnaud-Taylor's and Murphy's cited 2012 statements, see First Am. Compl. ¶¶ 9, 60–67, do not, in any event, completely contradict prior disclosures. Some are not even materially different from pre-September 11, 2011 disclosures. Compare, e.g., J.A. 136 (Murphy's March 26, 2012 testimony acknowledging that software program was not complete when he left), with J.A. 764 (Murphy's September 8, 2011 declaration that "software to automate an installation is incomplete").

later assigned their claims to plaintiff.  See Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d at 536–37 (identifying warnings in Waste2Energy's October 1, 2009 SEC filing, which "should have taken on greater significance in the context of W2E's consistent defaults on its debentures").  For instance, investors allegedly told by defendants that Waste2Energy's "proprietary intellectual property" was "conservatively worth in excess of $10 million which could easily be monetized to satisfy the Debentures," First Am. Compl. ¶ 55, might reasonably have been expected to question that valuation in light of the $10,538,029 write-off for "[i]mpairment of technology" disclosed in Waste2Energy's October 1, 2009 SEC filing.  J.A. 408; see id. 390.  Such a conflict between professed valuation and the company's public SEC filings was itself strong circumstantial evidence that the W2E Defendants "knew facts or had access to information suggesting that their public statements were not accurate."  ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 199 (2d Cir. 2009).  Minimal investor effort would also have uncovered defendant Murphy's September 8, 2011 declaration, which revealed, among other things, that Waste2Energy's intellectual property was "not, by itself, sufficient to complete a W2E product, i.e., additional know-how [was] necessary to enable a plant to be constructed" and that "the software to automate an installation [was] incomplete and must be customized for each installation."  J.A. 763–64.

Moreover, by August 2011, at least one investor was aware that the W2E Defendants had misrepresented facts when soliciting investors.  See J.A. 248–53 (August

9, 2011 declaration of Carmelo Luppino stating, among other things, that in 2007, "[a]s part of the solicitation for [his] investment in W2E," Luppino "was . . . shown a video of what was represented to be a fully functional waste-to-energy plant built by W2E in Dargavel, Scotland," but Luppino later "came to learn that the Dargavel plant did not become mostly operational" until 2011 and still remained under construction, and that W2E was "totally unable to obtain a performance bond to construct any of the plants utilizing W2E's proprietary technology"). The fact that Luppino's discoveries were uncovered, at least in part, "through conversations with various management and employees of W2E," J.A. 251, further indicates that a reasonable investor exercising due diligence could have discovered sufficient facts to plead scienter before September 11, 2011. Cf. J.A. 86−87 (POM noting that W2E would "make available to any prospective investor the opportunity to ask questions of and to receive answers . . . concerning [W2E] and the terms and conditions of the offering").

Thus, like the district court, we conclude that plaintiff's § 10(b) claim against the W2E Defendants is untimely.

3. <u>Arbitration Clause</u>

In challenging the order compelling arbitration, plaintiff argues that there is a conflict between the district court's determination that "[p]laintiff's claims that Vista misrepresented W2E stock to investors and was unjustly enriched as a result falls within the scope of [the arbitration] agreement, which authorized Vista to act as an agent of the

8

investors with respect to the purchase or sale of securities," Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d at 538 (internal quotation marks omitted), and its finding that "Vista had no fiduciary duty to [investors] based on this transaction" because "Vista acted solely as a placement agent for W2E and not as an advisor to the investors," id. at 542 & n.2. We are not persuaded. The district court's "no fiduciary duty" determination was made in the context of discussing four investors who did not sign a customer agreement with Charles Vista. See id. at 538–42. Thus, it was not at all inconsistent for the district court to conclude that the dispute at issue came within the scope of the customer agreements' broad arbitration clause for investors who had signed that agreement with Charles Vista (and thereby appointed Charles Vista as their agent), while also concluding that there was no agency relationship or resulting fiduciary duties between Charles Vista and non-signing parties.

"Two questions are relevant to determining arbitrability: (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1032–33 (2d Cir. 2014) (internal quotation marks omitted). Here, plaintiff contests only the latter. Plaintiff's arbitration challenge fails because the customer agreement's arbitration clause states that "[a]ny controversy or claim arising out of or relating to this agreement shall be settled by arbitration before the Financial Industry Regulation Authority." J.A. 160, 164; see Mehler v. Terminix Int'l Co., 205 F.3d 44, 49–

50 (2d Cir. 2000) (noting such language in arbitration clause is "classically broad"). Like the district court, we conclude that plaintiff's claims against the Vista Defendants (with respect to the eighteen investors who signed the customer agreement) arise out of or relate to the customer agreement. See Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d at 538. Plaintiff's contention that this presented a factual question fails because "we review de novo [an arbitration] agreement's interpretation and scope." Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 295 (2d Cir. 1999). Accordingly, we affirm the decision compelling arbitration of those claims.

4.  Section 10(b)(5) and Section 20 Claims

Plaintiff further challenges the district court's determination that it (1) did not plead sufficient facts to pursue the Vista Defendants for the POM under the group pleading doctrine; (2) was not entitled to a presumption of reliance; (3) failed to plead reliance with sufficient particularity; and (4) did not reasonably rely on the Vista Defendants' alleged misrepresentations.

We need not address each contention because, like the district court, we conclude that (1) plaintiff failed to allege sufficiently that the Vista Defendants qualified as makers of the POM under Janus Capital Group v. First Derivative Traders, 131 S. Ct. 2296 (2011); and (2) any reliance by plaintiff (or, more accurately, by the four investor assignees without a customer agreement) on the Vista Defendants' oral representations was

10

unreasonable. See Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d at 539, 539, 542–43.

Janus states that, "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Janus Capital Grp. v. First Derivative Traders, 131 S. Ct. at 2302. Thus, liability for misrepresentations does not extend "beyond the person or entity that ultimately has authority over the false statement." Id. at 2303. For the reasons explained by the district court, plaintiff's allegations that the POM was drafted with the approval and input of some Vista Defendants is not sufficient to demonstrate the control essential to maker liability. See id. at 2302 ("Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right."); Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d at 539.

A plaintiff cannot plausibly plead reasonable reliance, an element of securities fraud, if he relied on a representation that "through minimal diligence" he could have discovered was untrue. Brown v. E.F. Hutton Grp., 991 F.2d 1020, 1032 (2d Cir. 1993). As already discussed, plaintiff could have uncovered the facts relevant to its claims by, among other things, examining Waste2Energy's public filings. Further belying plaintiff's claim of reasonable reliance is the POM's express language cautioning investors "not to rely upon any information not expressly set forth in this memorandum" and that "no dealer, salesman or other person has been authorized to give any information or to make any

representation not contained in this memorandum and, if given or made, such information or representation must not be relied upon as having been authorized by us." J.A. 87 (emphasis added).[2]  Moreover, the POM disclosed Charles Vista's compensation package and stated, under a bolded heading entitled "There is a conflict of interest between the interests of the Placement Agent and the investors in the Offering," that because "[a] significant amount of the Placement Agent's compensation will be determined by the amount of Debentures sold . . . a conflict of interest exists for the Placement Agent." J.A. 96.  Thus, any reliance on the Vista Defendants' representations cannot be deemed reasonable.

Because plaintiff failed plausibly to allege a § 10(b) claim against the Vista Defendants, plaintiff's § 20(a) control person liability claim against the W2E Defendants also fails, see ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d at 207, and was properly dismissed.

---

[2] Although plaintiff claims that the POM was issued under the Charles Vista name, the POM's use of the words "us" and "we" clearly do not reference Charles Vista, which is separately defined in the POM as a broker dealer, not the offeror.  See J.A. 92 ("We have retained Charles Vista, LLC as a broker dealer . . . ."), 94 ("We have retained Charles Vista, LLC ('**Charles Vista**' or the '**Placement Agent**') a broker-dealer . . . as the exclusive placement agent for the Offering." (emphasis in original)).

5. <u>Conclusion</u>

We have considered plaintiff's remaining arguments and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

13